## Thomas Administrator, v. Prudential Insurance Company of America, Appellant.

[Marked to be reported.]

*Life insurance—Condition in policy as to designation of beneficiary by company—Public policy.*

A condition in a policy of life insurance, that the "company may pay the sum of money insured hereby, to any relative by blood, or connection by marriage of the assured, or to any person appearing to said company to be equitably entitled to the same by reason of having incurred expenses in any way on behalf of the insured, for his or her burial, or for any other purpose, and the production by this company of a receipt, signed by any or either of said persons, or any other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied," makes the company the judge as to who is the person equitably entitled to the money. Such a contract is not against public policy.

Argued April 12, 1892. Appeal, No. 363, Jan. T., 1892, by defendant, from judgment of C. P. Luzerne Co., May T., 1889, No. 765, on verdict for plaintiff, W. R. Thomas, administrator of Griffith Pugh, deceased. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Appeal from alderman in action on life insurance policy.

On the trial before WOODWARD, J., it appeared that Laura

Evans was a married woman and not a relation of the assured. The other facts appear by the opinion of the Supreme Court. The charge of the court below was, in part, as follows :

" I have said to you that the presumption is in a case like this, that this insurance was originally taken by the deceased himself. In addition to this presumption we have some testimony on the subject, consisting of declarations made by him during his lifetime, as to the fact that he held this policy himself, and also that he had paid premiums upon it from time to time. In the next place, we have the fact that Mrs. Evans, the payment to whom is interposed by the company as a defence now, had no insurable interest in the life of Pugh at the time the insurance was granted. Whatever may have been the fact as to her being his creditor at the time of his death, it is clearly established that, at the time of the issuance of this policy by the company, she had no insurable interest whatever in his life, and was not his creditor. [Therefore, in our opinion, the payment to her was a mistake at least, and will afford no bar to a recovery in this action by the administrator, the personal representative of the insured party. The policy, however, contains a peculiar clause and raises a legal question which it is our duty to pass upon in this action. The policy provides that the company promises to pay in case of death, at its home office in Newark, New Jersey, within 24 hours after satisfactory proof at its said office, of the death of the person named in the first column of the schedule herein contained, unto his or her executors or administrators, unless settlement shall be made under the provisions of article 2 hereinafter contained, the sum of money as provided by the third column of said schedule, subject to the restrictions, etc. Now, the second clause referred to is this : The company may pay the sum of money insured hereby to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense in any way on behalf of the insured for his or her burial, or for any purpose, and the production by this company of a receipt signed by any or either of said persons, or of other sufficient proof of such payments to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims

under this policy have been fully satisfied. If that is a valid contract, and the money was actually paid to Mrs. Evans, then the question would be whether that contract can be enforced in this case as the defendant asserts it. Our view is, and we say to you as matter of law, that the terms of section 2 of the policy, referred to, will not justify the company in paying the insurance money to any other person than the legal representatives of the deceased, under the circumstances of this case."] [5]

The defendant's points, refused, were, among others :

"3. That under the policy, its conditions and the death proofs, it was optional with the defendant, as to which one of the persons named in the second condition of the policy the defendant company might pay the loss, and the said defendant company having exercised the discretionary powers conferred by the second condition of the policy, by paying the loss to Laura Evans, who had incurred expense on behalf of the insured and who by reason thereof appeared to the defendant company to be equitably entitled to be paid the same, the verdict of the jury must be for the defendant." [2]

" 4. That the defendant company only agreed and covenanted with the insured to pay the amount of the policy to his executors or administrators when no settlement had been made under the second condition of the policy, and the defendant company having made a settlement with Laura Evans, one of the persons designated in the second condition, by paying her the full amount of the policy, the verdict of the jury must be for the defendant." [3]

"5. That under all the testimony in the case, the verdict must be for the defendant." [4]

The court directed a verdict for the plaintiff.

*Errors assigned* were (2–4) the refusal of defendant's points as above, quoting them ; (5) the charge of the court as above, in brackets, quoting it.

*E. F. McGovern,* for appellant.—The remedy of the plaintiff is against Mrs. Evans, if she is not entitled to the money under the law: Hoffman v. Hoke, 122 Pa. 377. The company paid in strict accordance with the policy and is discharged from further liability: Metropolitan Insurance Company v. Schaf-

fer, 50 N. J. L. 72; Pfaff v. Prudential Insurance Company, 141 Pa. 562. The condition of the policy is equivalent to an assignment of the interest of the beneficiary to a person having no insurable interest; and payments to the assignee in such cases have been held sufficient to protect the company: Hettinger v. U. B. M. A. Soc., 1 Del. Co. R. 466; Hoffman v. Hoke, 122 Pa. 377; Speck v. Hettinger, 4 Atl. R. 168.

There being no rule of law which declares the contract void, the company cannot be compelled to pay a second time: Bomberger v. U. B. A. S. of Pennsylvania, 18 W. N. C. 459; Hettinger v. U. B. M. A. Soc., 1 Del. Co. R. 466.

If the condition of the policy in question, or any part of it, is void, then the whole contract is void and no recovery can be had by the plaintiff, the consideration being indivisible: Addison on Contracts, 8th ed., vol. 2, *1170; DeBeerski v. Paige, 36 N. Y. 537; Filson v. Himes, 5 Pa. 452; Frazier v. Thompson, 2 W. & S. 235; Pollock on Principles of Contracts, 322–3.

*Edward A. Lynch* and *James H. Shakespeare, John S. Lenahan* with them, for appellee.—Laura Evans was not within the terms of the condition of the policy; she was not " a relative by blood, or connection by marriage, of the assured;" nor was she a "person appearing to the company to be equitably entitled to the same (the insurance money) by reason of having incurred expenses, in any way, on behalf of the insured, for his . . . . burial, or for any other purpose." The insured resided at the house of the husband of Laura Evans and may have been indebted to *him* for board.

There being no essential facts in dispute, the court was bound to declare the law: Wanamaker v. Burke, 111 Pa. 423.

No negligence should be imputed to the plaintiff. The company should follow Laura Evans: Corn. Ex. Nat. Bank v. N. Bank, 78 Pa. 233.

OPINION BY MR. CHIEF JUSTICE PAXSON, April 25, 1892:

The question, whether Laura Evans had an insurable interest in the life of Griffith H. Pugh, does not arise in this case. She did not insure his life, nor was she the holder of a policy thereon. The amount of the policy, $60, was paid to her after the death of the assured, by the company defendant, under the

2d clause of the policy, which is as follows: " The company may pay the sum of money insured hereby to any relative by blood, or connection by marriage, of the assured, or to any person appearing to said company to be equitably entitled to the same, by reason of having incurred expenses, in any way, on behalf of the insured, for his or her burial, or for any other purpose, and the production by this company of a receipt, signed by any or either of said persons, or any other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

This action was brought in the court below against the defendant company by the administrator of Griffith H. Pugh, to recover the amount of the policy, which, as before stated, had been previously paid to Laura Evans. We are unable to see how the administrator can recover from the company the money, which it paid in strict compliance with the contract between it and the assured. We have not the charter of the company before us, and cannot, therefore, speak with accuracy as to its object. So far as we can gather from the case before us, it would appear to be to insure its members to the extent of a small sum of money (in this case it was $60, and the weekly payment, 5 cents), in order to provide the means for any necessary expenses in the last sickness or death of the assured. The manifest object of the 2d schedule of the policy, which I have quoted, was to enable the company, in case of the death of the assured, to pay the amount of the policy without the expense of an administration. The sum of $60, if it could be paid only by raising up a legal administration, would be of little use to any one, as nearly the whole of it would be absorbed in fees and expenses. Aside from this, the company has a right to protect itself, with the consent of the assured, against trifling but expensive litigation, which might constantly occur over disputes as to the parties entitled. Hence, it was provided by the contract between the company and the assured, that the former may pay the sum of money insured by the policy to any relative by blood, or connection by marriage, of the insured, or to any other person appearing to said company equitably entitled to the same, by reason of having incurred

expenses, in any way, on behalf of the insured, for his or her burial, or for any other purpose. It was further provided by said contract, as already stated, that the production by the company of a receipt, signed by any or either of the persons to whom the money has been paid, "shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

The company paid this money to the person appearing to it to be equitably entitled thereto, and produced a receipt signed by her for the same. This was a complete defence, under the very terms of the policy. It is for the company to judge who is the person to be equitably entitled to the money. This discretion is vested in it by the contract between the parties. The contract itself does not offend against any rule of law or public policy, and we cannot hold that the administrator is entitled to recover without making a new contract for the parties.

It appears from the evidence that the assured boarded with Laura Evans up to the time of his death; that he owed her $20 for board, and that she advanced $8 for funeral expenses. This may, or may not, be the reason why the defendant company regarded her as equitably entitled to the insurance money. It was sufficient for the purposes of this case that she appeared to said company to be so entitled.

Judgment reversed.